## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

DR. OMAR NIEVES-ORTIZ, et al.,

    **Plaintiffs,**

    **v.**

    Civil No. 20-1717 (ADC)

CORPORACIÓN DEL CENTRO
CARDIOVASCULAR DE PUERTO RICO
Y DEL CARIBE, et al.,

    **Defendants.**

## OPINION AND ORDER

Before the Court is co-defendants Dr. Juan Carlos Sotomonte-Ariza ("Dr. Sotomonte") and Heart Rhythm Management P.S.C.'s ("HRM") motion to dismiss. **ECF No. 27.** Also before the Court is co-defendants Medtronic Puerto Rico Operations Co. ("Medtronic") and Edgardo Hernández-Vilá's ("Hernández") motion to dismiss. **ECF No. 39.** Co-defendant Corporación del Centro Cardiovascular de Puerto Rico y del Caribe ("CCC") joined both motions. **ECF No. 52.** For the reasons below, both motions to dismiss are **GRANTED.**

### I. Background

Plaintiff Dr. Omar Nieves-Ortiz ("plaintiff") filed suit against Dr. Sotomonte, HRM, Medtronic, Hernández and CCC (together, "defendants"). **ECF No. 1**. As relevant herein, plaintiff raised federal antitrust, Puerto Rico antitrust, and Puerto Rico tort law claims against the defendants. *Id.*

CCC is a public hospital that services patients with cardiovascular disease. *Id.*

Plaintiff is a doctor with privileges at CCC. *Id.* Dr. Sotomonte is the Medical Director at CCC. *Id.* He also maintains a private medical practice, which he manages under HRM, a corporation he formed. *Id.* Both plaintiff and Dr. Sotomonte are cardiac electrophysiologists. *Id.*

Medtronic manufactures and sells medical products such as pacemakers and defibrillators. *Id.* As relevant herein, Medtronic sells medical devices to be used in cardiac electrophysiology procedures at CCC. *Id.* Hernández is the Medtronic sales representative that is assigned to CCC. *Id.*

Plaintiff imputes antitrust violations in relation to the six following alleged actions taken by the defendants:

1. "Guaranteeing a market share" for Medtronic products at CCC. *Id.* at 50.

2. Providing emergency room contracts in exchange for patient referrals to HRM. *Id.*

3. Instituting a transfer program for cardiology patients that purportedly served as a pipeline for patient referrals to HRM. *Id.*

4. Employing other cardiac electrophysiologists at HRM to reduce competition. *Id.* at 51.

5. Obtaining patient referrals from cardiology fellows "by devious means." *Id.*

6. Tying the provision of cardiac electrophysiology services to the purchase of Medtronic medical devices. *Id.*

Plaintiff maintains these alleged antitrust violations have caused him harm by limiting his choice in the medical devices he utilizes and by inflicting economic loss.[1] *Id.*

Now, the defendants move to dismiss. **ECF Nos. 27** and **39.** They attack plaintiff's standing to challenge the alleged antitrust violations and posit that plaintiff has failed to plausibly plead his claims. *Id.*

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief could be granted. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Garcia-Catalan v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). When ruling on a motion to dismiss for failure to state a claim, a district court must "ask whether the complaint states a claim to relief that is plausible on its face, accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor." *Cooper v. Charter Communications Entertainments I, LLC*, 760 F.3d 103, 106 (1st Cir. 2014) (*citing Maloy v. Ballori-Lage*, 744 F.3d 250, 252 (1st Cir. 2014)) (internal quotations marks omitted).

"To cross the plausibility threshold, the plaintiff must 'plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] Plaintiff's allegations of economic loss are tied to the revenues lost due to patients diverted from his practices through the defendants' alleged illegal referral schemes. The complaint does not connect the alleged economic loss suffered by plaintiff to Medtronic's market share or to the tying of Medtronic products to the provision of cardiac electrophysiology services. **ECF No. 1** at ¶¶ 5.12, 8.30, 8.33, 8.35, 10.15.

alleged.'" *Cooper*, 760 F.3d at 106 (*citing Maloy* 744 F.3d at 252). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, … , on the assumption that all the allegations in the complaint are true (even if doubtful in fact) … ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

### III. Discussion

#### a. Antitrust

Plaintiff contends defendants violated §§ 1 and 2 of the Sherman Act.[2] *See* 15 U.S.C. §§ 1 and 2. He brought a private cause of action for these violations via the Clayton Act. *See* 15 U.S.C. § 15 (creating private cause of action for Sherman Act violations).

#### *Section 1*

Per § 1 of the Sherman Act, every "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States … is declared to be illegal." 15 U.S.C. § 1. To plausibly plead a violation under this provision, a plaintiff must allege facts that support three elements: "(1) the existence of a contract, combination or

---

[2] Plaintiff also raises claim under §§ 3(a) and 3(b) of the Sherman Act. However, those sections are inapplicable here because Puerto Rico is treated as a state for the purposes of antitrust legislation. *See United States v. Rivera-Hernández*, 155 F. Supp. 3d 137, 142 (D.P.R. 2015), *aff'd sub nom. United States v. Vega-Martínez*, 949 F.3d 43 (1st Cir. 2020); *See also Córdova & Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank N.A.*, 649 F.2d 36, 43–44 (1st Cir. 1981).

conspiracy among two or more separate entities that (2) unreasonably restrains trade and (3) affects interstate or foreign commerce." *Rivera-Hernández*, 155 F. Supp. 3d at 142–43.

Under § 1 of the Sherman Act, a seller is also prohibited "from 'tying' the sale of one product to the purchase of a second product if the seller thereby avoids competition on the merits of the 'tied' product." *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1178 (1st Cir. 1994). Such a claim requires the satisfaction of four elements: (1) that the tying and tied products be distinct products; (2) an (express or implied) agreement or condition establishing a tie; (3) that whoever engages in tying have sufficient economic power in the market for the tying product to distort consumers' choices with respect to the tied product; and (4) "that the tie forecloses a substantial amount of commerce in the market for the tied product." *BookLocker.com, Inc. v. Amazon.com, Inc.*, 650 F. Supp. 2d 89, 98 (D. Me. 2009) (*quoting Borschow Hosp. & Med. Supplies v. Cesar Castillo Inc.*, 96 F.3d 10, 17 (1st Cir.1996)).

*Section 2*

In turn, § 2 of the Sherman Act punishes every "person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. "To state a claim for monopolization under § 2 of the Sherman Act, a plaintiff must adequately allege that: (1) the defendant has monopoly power and (2) the defendant has engaged in impermissible 'exclusionary practices' with the design or effect of protecting or enhancing its monopoly position." *CCBN.Com, Inc. v. Thomson Fin., Inc.*, 270 F. Supp. 2d 146, 156–57 (D. Mass. 2003) (*citing*

*Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 195–96 (1st Cir.1996)) (internal citations omitted). Section 2 also requires that the actual or attempted monopoly affect interstate commerce. *See* 15 U.S.C. § 2.

And, a plausible claim for attempted monopolization under § 2 must allude to facts that allege "(1) anti-competitive or exclusionary conduct; (2) specific intent to monopolize; and (3) a dangerous probability that the attempt will succeed." *Id.* (citing *Boston Scientific Corp. v. Schneider*, 983 F.Supp. 245, 268 (D.Mass.1997) (citing *CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 851 (1st Cir.1985))). Again, § 2 also requires that the actual or attempted monopoly affect interstate commerce. *See* 15 U.S.C. § 2.

### i. Antitrust Standing

The defendants challenge plaintiff's standing to bring his §§ 1 and 2 claims. There are six alleged antitrust violations in question. *See supra* at p. 2. The defendants' arguments land wide of the fairway four times, but twice hit the green.

Plaintiff's antitrust claims must be dismissed if he lacks antitrust standing to pursue them. The Court looks to six factors to determine whether a plaintiff has antitrust standing: "(1) the causal connection between the alleged antitrust violation and harm to the plaintiff; (2) an improper motive; (3) the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws ('antitrust injury'); (4) the directness with which the alleged market restraint caused the asserted injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex apportionment of damages."

*Arroyo-Melecio v. Puerto Rican Am. Ins. Co.*, 398 F.3d 56, 72 (1st Cir. 2005) (*quoting Sullivan v. Tagliabue*, 25 F.3d 43, 46 (1st Cir.1994)).

Plaintiff claims that the defendants guaranteed a market for Medtronic products at CCC. **ECF No. 1** at 50. He also claims the defendants illegally tied the provision of cardiac electrophysiology services to the purchase of Medtronic medical devices. *Id* at 51. Plaintiff alleges that he suffered an injury because of these violations in the form of a limit to the medical devices he can recommend to his patients. *Id.* at ¶¶ 5.12, 8.30, 8.33, 8.35, 10.15. This is not enough to establish antitrust standing.

The sort of injury plaintiff complains of is generally too remote – it is a result of the vertical distribution of a product. *See Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 11 (1st Cir. 1999). Instead, a consumer or competitor would be better situated to seek redress for these alleged violations. *Id. See also Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 542 (1983) ("the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party … to perform the office of a private attorney general"). Here, plaintiff has plead he is neither. Furthermore, the weak, non-economic nature of the pleaded injury coupled with the (consequential) speculative and complex damages calculus weigh heavily against a finding of antitrust standing. *Sullivan*, 25 F.3d at 52.

As such, plaintiff's antitrust claims pertaining to Medtronic's market share and tying of the provision of cardiac electrophysiology services to the purchase of Medtronic medical devices are **DISMISSED WITHOUT PREJUDICE**.

### ii.   Other Antitrust Claims

The remaining antitrust claims are also dismissed for a simple reason: plaintiff failed to plead an essential element.

Indeed, to properly plead a Sherman Act violation, a plaintiff must "(1) identify a 'relevant' aspect of interstate commerce, and (2) specify its relationship to the defendant's activities alleged to be 'infected' with illegality." *Diaz Aviation Corp. v. Airport Aviation Servs., Inc.*, 762 F. Supp. 2d 388, 395 (D.P.R. 2011) (quoting *Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715, 723 (10th Cir. 1980)). *See also Ivision Int'l of Puerto Rico, Inc. v. Davila-Garcia*, 364 F. Supp. 2d 166, 170–71 (D.P.R. 2005) (Plaintiffs must "allege a general connection with interstate commerce, and an effect thereon resulting from defendant's allegedly illegal conduct.")

Here, plaintiff's complaint is devoid of even a single allegation that could connect the antitrust violations in question to interstate commerce. Therefore, the Court must **DISMISS** the same **WITHOUT PREJUDICE**

### b.   Remaining State Law Claims

The only federal law claims pending before the Court are two brought under the False Claims Act "FCA" and the Constitution's due process clause. All other pending claims are

brough under Puerto Rico antitrust and tort law, presumptively under the supplemental jurisdiction conferred by 28 U.S.C. § 1367. [3]

When deciding whether to assert supplemental jurisdiction, the Court "must exercise informed discretion." *Redondo Const. Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011). Even though the Court is not governed by a categorical rule, it "must weigh concerns of comity, judicial economy, convenience, and fairness" when exercising jurisdiction over state law claims. *Id.* The suitable inquiry is "pragmatic and case-specific." *Roche v. John Hancock Mutual Life Ins. Co.*, 81 F.3d 249, 257 (1st Cir. 1996).

Having weighed the interests of comity, judicial economy, convenience and fairness, the Court will decline to exercise supplemental jurisdiction over plaintiff's Puerto Rico antitrust claims, and over his Puerto Rico tort claims.[4] Moreover, the "factual and substantive overlap" between these claims and the FCA and due process claims against CCC is not sufficient "for it to be efficient for [this Court] to adjudicate them." *Carreras-Morales v. Silgan Containers Mfg. Puerto Rico, LLC*, Civ. No. 19-1828 (SCC), 2022 WL 345475 at *12 (D.P.R. Feb. 4, 2022). Doing so would require the Court to apply different bodies of law to different bodies of fact. *Id.*; *Sevelitte v. The Guardian Life Ins. Comp. Of America*, Civ. No. 21-1063 (LTS), 2022 WL 1051351, at *6 (D. Mass. Feb. 25, 2022).

---

[3] Again, in addition to his federal antitrust and FCA claims, plaintiffs brough claims under Puerto Rico antitrust and tort law. **ECF No. 1.**

[4] The Court will exercise supplemental jurisdiction over the Puerto Rico tort claims against CCC that stem from the same conduct that gives rise to plaintiff's FCA and due process claims.

As such, plaintiff's Puerto Rico antitrust claims and tort claims are **DISMISSED WITHOUT PREJUDICE,** except for the Puerto Rico tort claims against CCC that stem from the same conduct that gives rise to plaintiff's FCA and due process claims.

### IV. Conclusion

For the reasons above, Dr. Sotomonte and HRM's motion to dismiss (**ECF No. 27**) and Medtronic and Hérnandez's motion to dismiss (**ECF No. 39**) are **GRANTED.** Plaintiff's antitrust claims are **DISMISSED WITHOUT PREJUDICE**. Furthermore, plaintiff's Puerto Rico antitrust claims and tort claims are **DISMISSED WITHOUT PREJUDICE,** except for the Puerto Rico tort claims against CCC that stem from the same conduct that gives rise to plaintiff's FCA and due process claims.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 23rd day of June, 2022.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**